# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRANDON WEBB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-124-RAW-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Brandon Webb requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born July 11, 1990, and was twenty-three years old at the time of the administrative hearing (Tr. 34, 169). He completed high school, and has worked as a lawn care worker, janitor, forklift operator, and security officer (Tr. 25-26, 222). The claimant alleges he has been unable to work since June 9, 2010, due to a severe back injury on the job that affected his legs, arms, and hands; Tourette's Syndrome; high blood pressure; hypoglycemia; migraines; lack of mobility for periods of time; and Scheuermann disease (Tr. 221).

## Procedural History

On February 3, 2012, the claimant applied for benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Kenton Fulton conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 25, 2014 (Tr. 19-27). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform the full range of light

work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, with the additional limitations of only occasionally climbing, balancing, stooping, kneeling, crouching, and crawling, as well as avoiding all exposure to unprotected heights and machinery. Furthermore, the ALJ determined that the claimant could perform simple tasks and instructions, with no more than occasional interaction with co-workers, and no public contact (Tr. 23). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, housekeeper, mail clerk, and laundry worker (Tr. 26-27).

## Review

The claimant contends that the ALJ erred by: (i) failing to account for his Tourette's syndrome in formulating the RFC, and (ii) wholly failing to address his obesity. The undersigned Magistrate Judge agrees that the ALJ failed to account for the claimant's obesity, and the decision of the Commissioner should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of low back strain, Tourette's syndrome, and anxiety (Tr. 21). As relevant, the medical evidence reflects that an MRI of the lumbar spine from July 30, 2010 revealed mild disc and moderate facet joint changes producing moderate encroachment of the left neural foramen at L4-5, and further noted numerous Schmorl's nodes and degenerative disc changes leading to the possibility of Scheuermann's disease (Tr. 326). He was largely treatment for lumbago, sprains and strains of lumbar, and pain in his lower limbs (Tr. 339). The claimant underwent a series of epidural steroid injections for his disc bulges, and Dr. James Odor noted that he ought to reach maximal medical improvement,

-4-

but that he would have "life long instructions however of staying in good shape, exercising and trying to keep his weight under good control." (Tr. 412-439). On July 30, 2012, Dr. Odor prepared a final report regarding the claimant's workplace injury, stating that he believed the claimant had no limitations from the standpoint of any injury related to his job, but noting that he did have some minimal disc bulging (Tr. 589). Dr. Odor believed the claimant should be able to return to regular work with no restrictions (Tr. 589). The medical record also reflects that the claimant's weight ranged from 302 to 343 pounds (Tr. 402, 428, 441, 482, 489, 583, 621).

On May 25, 2012, Dr. William Cooper, D.O., conducted a physical examination of the claimant (Tr. 440). Noting that the claimant's Tourette's syndrome was demonstrated by turning his head to the left and making a seal-bark type sound, he assessed the claimant with chronic low back pain, chronic bi-lateral groin pain, chronic neck pain, probably situational depression, obesity, sleep apnea, Tourette's syndrome, hypertension, hypoglycemia, and migraines (Tr. 441-442). In evaluating the claimant's range of motion, Dr. Cooper noted that the claimant had some limitations of range of motion of extension and flexion of the back, but was otherwise within normal limits (Tr. 443-446).

On August 9, 2012, Dr. Beth Jeffries, Ph.D., conducted a mental status evaluation of the claimant, assessing him with Tourette's syndrome and obsessive compulsive personality disorder (Tr. 451). She found that his prognosis was fair because he did not indicate a willingness or need to address his symptoms, but also noting that these symptoms had not significantly interfered over the course of his life (Tr. 451).

On September 8, 2012, state reviewing physician Steven A. Whaley, M.D. reviewed the medical record and determined that the claimant could perform light work, but could only occasionally perform postural limitations (Tr. 473-479). He noted the claimant's history of an on-the-job injury, obesity, and ongoing symptoms of Tourette's syndrome, and found the claimant's statements partially credible in light of these impairments (Tr. 479).

An October 2012 evaluation for the claimant's workers' compensation claim contained notes that the claimant had a body mass index of 42.3, placing him in Class 3 for obesity, and noting that the claimant had mildly restricted range of motion of the lumbar spine on flexion and extension, while rotational movements and lateral flexion were normal (Tr. 482). Dr. John Munneke found the claimant did not need ongoing medication management other than over-the-counter anti-inflammatories (Tr. 482).

In his written opinion at step two, the ALJ made findings as to the claimant's severe impairments (low back strain, Tourette's syndrome, and anxiety) but did not note or discuss any nonsevere impairments (Tr. 21-22). Specifically, the ALJ made no mention of the claimant's obesity at any point in his opinion. At step four, the ALJ summarized the claimant's hearing testimony and the medical evidence related to back pain and mental impairments, as well as the opinions from the consultative examiners (Tr. 23-25). He gave significant weight to the opinion of the state reviewing physician that the claimant could perform a reduced range of light work, specifically noting that the environmental limitations in the RFC were appropriate given the claimant's diagnosis of Tourette's syndrome, as well Dr. Odor's statements that the claimant did not have any

limitations but incorporating the light RFC in light of his recommendation for a rheumatoid arthritis workup (Tr. 25). He did not accord great weight to the state reviewing physician opinion finding the claimant had an organic mental disorder and personality disorder, noting that the record supported a diagnosis of anxiety disorder (Tr. 25). The ALJ then determined that the claimant was not disabled.

The claimant asserts that the ALJ erred in formulating his RFC, and the undersigned Magistrate Judge agrees. This Court and the Tenth Circuit have repeatedly stated that, once the ALJ determined that the claimant had *any* severe impairment, any failure to find additional severe impairments will not be a sole basis for reversal and is considered harmless. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. Nevertheless, the ALJ *is required* consider the effects of all the claimant's impairments (individually and in combination) and account for them in formulating the claimant's RFC at step four, which he did not do. In particular, aside from the noting the claimant's weight as part of a recitation from his hearing testimony, the ALJ failed to account for the claimant's obesity entirely. Additionally, the ALJ failed to properly assess the combined effect of all the claimant's impairments – both severe

and nonsevere – in assessing his RFC. Both of these errors require reversal. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]"). He should *at least* have discussed the impact any nonsevere impairments, on the claimant's severe impairments. This is particularly important when there is repeated evidence of documented difficulty ambulating due to his right ankle problems, and the claimant's ability to ambulate may have been further affected by his obesity.

Indeed, the ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 1.00 Musculoskeletal System, Q. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002). Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." *Id.* Here, the ALJ failed to even consider the

claimant's obesity as required by Soc. Sec. Rul. 02-01p, much less *how* the claimant's obesity and co-existing impairments actually affected the RFC. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC."), *citing* Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *1, *5-*6, *7. *See also DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ adequately considered the functional impacts of DeWitt's obesity, given that the ALJ's decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions. But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions. Rather it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments' – a process forbidden by SSR 02-1p." ), *citing* Soc. Sec. R. 02-1p, 2002 WL 34686281, at *6. The Commissioner points to more recent decisions from the Tenth Circuit in support of her assertion that the ALJ committed no error. *See Smith v. Colvin*, 625 Fed. Appx. 896, 899 (10th Cir. 2015) (where the ALJ determined the claimant's obesity was a severe impairment, declining to impose requirement that ALJ is required to note the absence of evidence that obesity resulted in additional functional limitations, and the claimant had "not shown that her obesity alone, or in combination with other impairments, resulted in any further limitations); *Rose v. Colvin*, 634 Fed. Appx. 632,

637 (10th Cir. 2015) (where the ALJ determined that obesity was a severe impairment, but claimant "points to no medical evidence indicating that her obesity resulted in functional limitations," no error). But these cases are distinguishable in that the ALJ determined in those cases that obesity was a severe impairment and the record reflects the ALJ actually considered the evidence in the record.

Because the ALJ failed to properly evaluate *all* the claimant's impairments singly and in combination, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 22nd day of August, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**